**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**OMEGA PATENTS, LLC,**

    **Plaintiff/Counter Defendant,**

**-vs-**                                            **Case No.  6:05-cv-1113-Orl-22DAB**

**FORTIN AUTO RADIO, INC., and**
**DIRECTED ELECTRONICS, INC.,**

    **Defendants/Counter Claimants.**
_____

**ORDER**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **PLAINTIFF'S MOTION FOR RULE 37 SANCTIONS AGAINST DIRECTED ELECTRONICS, INC. (Doc. No. 70)**
>
> **FILED:** **June 14, 2006**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

Omega Patents, L.L.C., is a patent holding company that holds a number of patents in the consumer electronics field. Omega Patents previously filed suit against Defendant Fortin Auto Radio, Inc., in March 2004 for patent infringement; that suit was resolved in September 2004 through a settlement agreement in which Fortin was granted a license to practice certain patents (the "Omega-Fortin Auto License"). Subsequently, Omega Patents filed this lawsuit on July 29, 2005 against Fortin to enforce the settlement agreement, believing that certain royalties from the patents were being

under-reported. Doc. No. 1. One source of sales for the under-reported royalties was allegedly through Defendant Directed Electronics, Inc.'s ("Directed") sales of products allegedly containing Plaintiff's patents, although Fortin has denied licensing the technology to Directed. On November 18, 2005, Omega filed its First Amended Complaint naming Directed as an additional Defendant. Doc. No. 27.

On January 17, 2006, Directed filed a Motion to Transfer the case to California (Doc. No. 32) and a Motion to Stay Discovery (Doc. No. 39). Although Omega had served a number of discovery requests on Directed on February 3, 2006, Directed did not respond to the requests while its Motions to Transfer and Stay Discovery were pending. *See* Doc. No. 39. Omega filed motions to compel documents to be produced (Doc. No. 50) and the deposition of a Directed corporate representative (Doc. No. 51). On April 27, 2006, the Court denied Directed's Motion to Transfer (Doc. No. 57) and denied as moot Directed's Motion to Stay Discovery, and Omega's Motions to Compel in light of the other rulings. The Court ordered Directed to "produce responsive documents within 11 days of the date of this Order" and "produce its corporate representative for deposition" on May 18, 2006. Doc. Nos. 57, 61.

Omega now contends that Directed failed to comply with the Court's Order – producing only a small portion of its documents and a 30(b)(6) witness who was unprepared to respond to issues in the case – and seeks sanctions against Directed. Directed responds that Omega's contentions are "baseless and contrived" because it produced responsive documents and its prepared corporate representative within the time required by the Court's order.

***Production of Documents***

-2-

Omega's document request to which the Court ordered Directed to provide a response, sought production of the following types of documents: referring to patents-in-suit; evidencing an attempt by Directed and Fortin to design around the patents-in-suit; identifying all employees, agents, or independent contractors responsible for new product development at Directed since 1999; evidencing development and gross sales of (a) the 417 GM OEM keyless entry upgrade to an alarm, (b) the 555G immobilizer; (c) 455J Jeep door lock interface (year 1999+); (d) 455G Trailblazer interface; (e) 456A GM door lock interface; (f) 456B Buick and Cadillac door lock interface; (g) 456G GM full size truck and SUV door lock interface; (h) 457G GM bypass and door lock interface; (I) 457C Chrysler door lock interface. Doc. No. 50. The Court ordered that responsive documents be produced by May 8, 2006. Doc. No. 57. Omega contends that the documents produced by Directed were "sparse, at best." For financial records, Directed produced tax returns and a single-page purportedly showing gross sales of the accused products. For development of the accused products, Directed produced only a few selected sections of Directed development notebooks and some circuit diagrams. According to Omega, Directed produced no e-mails.

Directed contends that, in addition to producing its annual tax returns and filings and an accounting of Directed's gross sales of the accused products, Directed also produced annual audited financial statements going back to 1999. Doc. No. 77. Directed also contends that its production concerning "development of the accused products" included all schematics, PCB layouts records, design records and any other available materials regarding development of the accused products. Doc. No. 77. Directed contends that all of the accused products are "based on a basic platform that was developed by Directed during the 1998-1999 period, when Directed was a much smaller company. For the most part, development of the accused products entailed typically minor changes

to the basic platform or a product that came from the basic platform, neither of which are accused products. Accordingly, because development of the accused products typically entailed relatively minor changes to an existing product, little to no development documents were created during its development." Doc. No. 77 at 4. Directed also contends that it produced all the requested development documents regarding the accused products by the court-ordered deadline and complied with the Court's Order. Directed contends that it produced the notebook pages that were related to the accused products and responsive to Omega's requests and that it is not obligated to produce documents that have no relevance to Omega's requests and potentially contain Directed's confidential or proprietary information. As to emails produced, Directed admits that it only produce a handful of emails (five Bates-numbered pages) in the initial disclosure, but has since supplemented its initial production with 2,000 additional pages of electronic documents within 30 days of the initial production. Directed argues that it could not have produced them sooner without incurring undue burden and expense; it was only able to produce the 2,000[1] pages "after it performed a detailed and exhaustive key word search of all its electronic records to find documents that were responsive to Omega's requests." Directed searched "many tens of thousands of electronic documents in its active and archived databases and email systems, back-up devices and the personal hard drives and storage devices of Directed employees, [which] resulted in over seventeen thousand (17,000) potentially relevant documents which had to be organized, compiled, reviewed, Bates stamped and converted into the appropriate format. " Doc. No. 77 at 7.

***Deposition of Corporate Representative***

---

[1] Omega contends that 3,000 additional documents were produced, but the difference is of no moment. Doc. No. 70-1 at 3.

The Court ordered Directed to produce a corporate representative in response to Omega's Rule 30(b)(6) Deposition Notice. Doc. No. 57. On May 18, 2006, Directed produced Mark Rutledge as its Rule 30(b)(6) corporate representative in response to Omega's Rule 30(b)(6) Deposition Notice. Omega contends that Mr. Rutledge was unprepared for Topic Nos. 1 through 4 of Omega's Deposition Notice: (1) The factual basis for Directed's defenses or denials of the allegations raised in Plaintiff's Complaint; (2) The factual basis for DEI's counterclaims; (3) DEI's claims of invalidity; and (4) DEI's claims of non-infringement. Omega also contends that during his deposition, Mr. Rutledge referenced numerous documents that were responsive to Omega's Request for Production, including some that he reviewed prior to his deposition, but Directed had not produced before May 8, 2006, or even by the date of the deposition. *See* Doc. No. 70-2 at 15, 24, 25. Omega contends that Directed's delay in its full email production until June 12, 2006 – a month after Rutledge's deposition – reduced Omega's ability to obtain meaningful testimony during Directed's deposition.

Directed responds that its answer was not due until after Rutledge's deposition, thus it had no obligation to prepare him to answer questions regarding its defenses and counterclaims. Directed points to its self-described "generous" offer to provide another corporate representative at its corporate offices in California or via video conference, but not in Orlando. Directed also contends that Omega's Rule 30(b)(6) deposition notice did not specify a representative knowledgeable regarding Omega's specific document requests and Rutledge's responses were admittedly based on his personal knowledge of what documents *might* have existed.

***Ruling on Motion for Sanctions***

Pursuant to Federal Rule of Civil Procedure 37, the Court may impose discovery sanctions when the party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). Rule

37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process. *Gratton v. Great American Communications*, 178 F.3d 1373, 1374-1375 (11th Cir. 1999) (affirming dismissal of suit for discovery abuse where trial court found that plaintiff bore "substantial responsibility" for the delays in discovery).

Rule 37(b)(2) provides a range of sanctions that a district court may impose upon parties and their attorneys for failure to comply with the court's discovery orders. It provides that the court, in its discretion, may impose, among others, the following sanctions: (1) the court may order that disputed facts related to the violated order be considered established in accordance with the claim of the party obtaining the sanctions order; (2) the court may refuse to permit the violating party to raise certain defenses, or it may prohibit that party from opposing certain claims or defenses of the party obtaining the sanctions order; (3) the court may strike any pleadings or any parts of the pleadings of the violating party, stay the proceedings, or even dismiss the action or enter a judgment of default against the violating party; and (4) the court may consider the violation a contempt of court." FED. R. CIV. P. 37.  Rule 37(d), Federal Rules of Civil Procedure, provides that "[t]he Court shall require the party failing to act or the attorney advising that party or both to pay reasonable expenses, including attorneys' fees, caused by the failure unless the Court finds that the failure was substantially justified or that the circumstances make an award of expenses unjust."

Omega served its discovery on Directed on February 3, 2006. *See* Doc. No. 39 at 3. Directed unilaterally and erroneously decided that it was not required to produce responsive documents once it filed its Motion to Stay Discovery (Doc. No. 39). Pursuant to the Federal Rules of Civil Procedure

and the Local Rules, and the Case Management and Scheduling Order[2], discovery proceeds without regard to whether a motion to stay discovery is filed; nowhere in the rules is a motion to stay discovery is self-executing. *See Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida*, Middle District Discovery (2001)[3] ("Normally, the pendency of a motion to dismiss or a motion for summary judgment will not justify a unilateral motion to stay discovery pending resolution of the dispositive motion. Such motions for stay are *rarely* granted. . . . [U]nusual circumstances may justify a stay of discovery in a particular case upon a specific showing of prejudice or undue burden.").

Rather than prepare to produce the responsive documents in an expedited manner once the Court granted Directed an additional eleven days following the April 27, 2006 Order to produce them, Directed took its time conducting the search of its electronic databases and did not "supplement" its original production until more than one month later, on June 12, 2006, and well after the deposition of its designated corporate representative. Directed fails to adequately explain its delay in producing the 2,000 pages of emails, other than to vaguely claim (without supporting sworn affidavits) that it could not have produced them sooner without incurring "undue burden and expense." Doc. No. 77 at 7.

Directed failed to timely respond to Omega's February 8, 2006 discovery with anything other than objections. Once the Court ordered Directed to respond by May 8, 2006 and to produce its properly-prepared representative by May 18, 2006, Directed had had an accumulated three months in which to prepare its response and its representative. It is no excuse, as Directed argues in its

---

[2] In support of its Motion to Stay, Directed cited only inapposite case law for the general principle that the court has inherent power to stay discovery. Doc. No. 39 at 1. Directed failed to cite any support for the proposition that discovery is stayed merely because a motion to dismiss is pending.

[3] Directed cited the *Handbook* in its Response and is obviously familiar with its contents. Doc. No. 77 at 6.

Motion to Stay, that preparing its discovery responses would "be needless" depending on the Court's rulings because the discovery "served is a nullity" if the motion to dismiss or transfer is granted. Doc. No. 39 at 4.  Because the only viable option available to Directed was a transfer of the case to another federal forum (*see* Doc. No. 57 at 4), any discovery conducted would be equally valid and appropriate in the other federal forum.  Directed's obligation under the practices of this Court, once it objected to Omega's production requests as overbroad, was to provide the documents responsive to a narrower version without waiting for a resolution of the dispute over the scope of the request.  *A Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida,* Middle District Discovery (2001).

Far more egregious than Directed's delay in discovery production, is its failure to prepare its corporate representative.  At the beginning of the deposition, when asked whether he was prepared to testify as to four of the main issues in the case properly noticed in Omega's notice (*see* Doc. No. 51), Mr. Rutledge testified on May 18, 2006 that he was not prepared to testify as to the factual basis for (1) Directed's defenses or denial of allegations, (2) counterclaims, (3) invalidity claims, and (4) non-infringement claims.  Doc. No. 70-2 at 5-6.  Directed contends that its representative was not prepared on the four topics because it had not yet filed its Answer to the First Amended Complaint, which it did on May 25, 2006.  Doc. No. 63.  Despite the fact that Directed had been named as a Defendant on November 18, 2005 in the First Amended Complaint (Doc. No. 27) and served shortly thereafter, and had filed a Motion to Dismiss or Transfer filed on January 17, 2006, it claims that six months was not adequate time in which to prepare its response (filed exactly one week after Rutledge's deposition) and prepare its representative.  This argument is without merit.

It is also clear from Mr. Rutledge's responses that the email searches pursuant to Omega's request for production had been conducted before his deposition (Doc. No. 70-2 at 7-8) yet the results of the search were not produced until June 12, 2006. From the content of Mr. Rutledge's answers (reproduced in Doc. No. 70-1 at 6), it appears that Directed did not produce all of the development documents it had until after Rutledge's deposition.

Directed does not deny that Mr. Rutledge was also inadequately prepared to answer questions regarding sales of or royalties paid for the allegedly infringing products. Directed also does not deny that, after questions from Omega's counsel pointing out obvious discrepancies in the financial statements, Mr. Rutledge admitted that he had doubts about whether the statements (with negative "gross sales") were accurate or contained information from years prior to 2002, which he believed to be difficult to obtain. *See* Doc. No. 70-1 at 8-9.

Directed admittedly failed to timely produce documents from its email system in accordance with the Court's April 27 Order. The Court finds Directed's failure to produce 2,000 documents from its email system until June 12, 2006 to be without substantial justification. The Court also finds that Directed's failure to present a corporate representative who was prepared to testify on Omega's properly noticed topics to be without substantial justification. Under Federal Rule of Civil Procedure 37(d), the Court "shall require the party failing to act or the attorney advising that party or both to pay reasonable expenses, including attorneys' fees, caused by the failure."

It is **ORDERED** as follows:

1. Directed shall pay sanctions for its failure to participate in discovery as set forth in the Federal Rules to Omega in the amount of $1500.00. While this may not provide complete recompense for the difficulties entailed here, the Court considers that this sum is commensurate with

the circumstances and should serve as an adequate reminder of the obligations of litigants and their counsel to conduct litigation in this Court in a spirit of cooperation and not obfuscation.

2. Directed will bear the cost of a second deposition of a properly prepared Rule 30(b)(6) corporate representative pursuant to the topics noticed in Omega's original notice of deposition dated April 3, 2006 (Doc. No. 52 at 5-8). The deposition will take place in Orlando, Florida at the offices of Plaintiff's counsel prior to August 4, 2006 on a date mutually agreeable to the parties.

**DONE** and **ORDERED** in Orlando, Florida on July 19, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record